commissions paid to Blundell, yet they did nothing. For these reasons, Fiserv should be held liable as a clearing firm for the losses suffered by Mr. Russo and the Plan.

### IV.   THE DAMAGES SUFFERED BY RUSSO

Because of the Respondents' wrongful conduct and actions, Mr. Russo is entitled to recover an award of damages for his losses -- including his lost capital, and the disgorgement of all commissions, margin interest and fees -- plus punitive damages, interest, attorneys' fees, and costs.

#### A.   Losses Suffered by Mr. Russo

A fair damages award must first account for the losses suffered by Mr. Russo as a result of the Respondents' wrongful conduct. Russo's losses specifically include all of the commissions, margin interest and fees wrongfully taken by the Respondents and all of the investment capital lost as a result of the Respondents' wrongful trading practices.

##### 1.   Disgorgement of commissions, margin interest, and fees

Russo had $97,844 in commissions and $16,014 in margin interest and fees wrongfully taken from his accounts. The Respondents should not be permitted to profit from their ill-gotten gains. The Respondents should not have margined Mr. Russo's accounts. Blundell did not explain this trading strategy with Mr. Russo, or receive his authorization for it and, in fact, it was contrary to Russo's specific instructions. Blundell needlessly increased the accounts' risk exposure while putting additional commissions and margin interest into the Respondents' pockets.

The Respondents must disgorge the wrongful profits that they took from Mr. Russo by managing his accounts in the manner contrary to his interests but most lucrative for the Respondents. Rather than putting the interests of the customer first, the Respondents were working for their own gain. It would be patently unfair for the Respondents to keep these tainted sums. An equitable award to Russo, at the very least, must include an order of disgorgement requiring the Respondents to return to Mr. Russo all amounts wrongfully taken from the accounts in fees, interest and commissions.

##### 2.   Loss of investment capital in Mr. Russo's accounts

In addition to the excessive commissions, margin interest and fees, Russo's losses also include the investment capital lost as a result of the Respondents' wrongful investment practices,

including misrepresentations, fraud, unsuitable purchases, unauthorized trading, and their over-concentration of the Russo's assets in a limited number of risky securities. The Respondents' improper trading and deceptive business practices exposed Mr. Russo to needless, excessive risks and caused him approximately $661,948 in trading losses.

### 3. Interest

Mr. Russo must also be awarded interest for having been deprived of his assets and for having lost the opportunity to have those assets properly invested. At minimum, Mr. Russo is entitled to the statutory rate of interest of 12% as set forth under Massachusetts law. Mass. Gen. Laws ch. 231, §6c.

### B. Punitive Damages

In view of the multiple and serious violations of basic laws and professional rules by the Respondents, punitive damages are called for in this case. The United States Supreme Court, in Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212 (1995), established that punitive damages may be properly awarded in securities arbitrations where the wrongful conduct warrants such action against the wrongdoers. In Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 906 F.2d 1206 (8th Cir. 1990), the court upheld a $2 million punitive damage award in conjunction with a $100,000 compensatory award, noting that punitive damages must be sufficiently large to make the unlawful activity economically disadvantageous for the brokerage firm.

A number of factors may be considered in determining the proper amount for a punitive damages award, including "'the degree of reprehensibility of the defendant's conduct,' the ratio of the punitive damage award to the 'actual harm inflicted on the plaintiff,' with a comparison of 'the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct.'" Labonte v. Hutchins & Wheeler, 424 Mass. 813, 826-27 (1997) (quoting BMW of N. Am. v. Gore, 116 S. Ct. 1589, 1599, 1601, 1603 (1996). Other criteria that may be considered include:

> a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred; a reasonable relationship to the degree of reprehensibility of the defendant's conduct; removal of the profit of an illegal activity and be in excess of it so that the defendant recognizes a loss; factoring in of the financial position of the defendant; factoring in of the costs of

litigation and encourage plaintiffs to bring wrongdoers to trial; an examination whether criminal sanctions have been imposed; an examination whether other civil actions have been filed against the same defendant.

Labonte, 424 Mass. at 827.

The misconduct in this case was egregious in that it was intentional and extremely reckless. At all times the Respondents knew exactly what they were doing to Mr. Russo and how they were abusing the account for their own gain. Blundell intentionally disregarded Mr. Russo's trading objectives and ignored his instructions in order to generate as much money as possible for himself, Salomon and Federal Street. Despite knowing about the various abuses, Salomon, Federal Street and Fiserv did nothing to stop Blundell and actually encouraged the months of exploitation that befell Mr. Russo's accounts. The Respondents' conduct caused Mr. Russo to suffer enormous monetary losses in his accounts and to personally endure months of stress and anxiety.

As described herein, the Respondents' outrageous conduct directly violated numerous securities laws and industry regulations. This conduct must be deterred through an award of punitive damages that is commensurate with the damages caused by the Respondents, that reflects the reprehensibility of their conduct, and that takes into consideration the financial gains that the Respondents have made over time using such wrongful trading practices. Therefore, Mr. Russo seeks punitive damages that would be appropriate under the facts and circumstances of this case.

### C.  Attorneys' Fees and Costs

Mr. Russo also is entitled to recover the attorneys' fees and costs he has incurred and will incur in pursuing his claims. It is well established under the Federal Arbitration Act that arbitrators have the inherent equitable authority to fashion appropriate awards, including the awarding of attorneys' fees and arbitration costs. 9 U.S.C. § 1 et seq.; Raytheon Co. v. Automated Business Sys., Inc., 882 F.2d 6 (1st Cir. 1989); Hunt v. Mobil Oil Corp., 654 F. Supp. 1487 (S.D.N.Y. 1987).

Moreover, a recovery of attorneys' fees is authorized under the New York Consumer Protection From Deceptive Acts and Practices Act, Ch. 20, N.Y. Gen. Bus. L. § 349(h). Where, as here, the Respondents' wrongful conduct is so apparent, it is inherently unfair for Mr. Russo to have to incur additional costs in the form of attorneys' fees and arbitration expenses just to recover

the funds that are properly due from the Respondents. In order to compensate Russo fully for the damages that the Respondents have caused them to suffer, Russo must be reimbursed for his attorneys' fees and costs.

### V.    CONCLUSION

The exploitation and mismanagement of Mr. Russo's accounts, the steady flow of lies and misrepresentations, the over-concentration in high-risk securities, and the completely improper and unauthorized use of margin, have caused Mr. Russo to suffer approximately $661,948 in net out-of-pocket losses. Russo respectfully requests that the panel of arbitrators find in his favor on the claims stated herein and award him the losses and consequential damages he has suffered -- including interest calculated through the date of arbitration, costs, expenses and attorneys' fees incurred in pursuing these claims -- along with punitive damages and any other relief that the panel may deem just and proper.

Respectfully submitted,
DANIEL RUSSO, INDIVIDUALLY
AND AS TRUSTEE FOR AEGIS
INTERNATIONAL, INC. PROFIT
SHARING RETIRMENT PLAN

By their attorneys,

*/s/ Harry S. Miller*

Harry S. Miller
Matthew J. Tuttle
John A. Beccia, III
PERKINS, SMITH & COHEN, LLP
One Beacon Street, 30th Floor
Boston, MA 02108
(617) 854-4000

Dated: October 30, 2002

29534-2-Stmt of Claim-Final

# OPTION APPLICATION (INFORMATION FURNISHED BY CUSTOMER - ALL QUESTIONS MUST BE ANSWERED)

**EMMETT A. LARKIN COMPANY, INC.**
100 BUSH STREET, SAN FRANCISCO, CA 94104

DATE: 4/19/01
ACCOUNT NUMBER: 71100887

CUSTOMER NAME (FIRST - MIDDLE-LAST): DANIEL D RUSSO
DATE OF BIRTH: 1 1 53
NO. OF DEP: 1
MARITAL STATUS: ☐ DIVORCED ☑ SINGLE ☐ MARRIED
EMPLOYER & OCCUPATION: AEGIS INT'L INC

## CUSTOMER OPTION ACCOUNT INFORMATION

**CUSTOMER'S ESTIMATED NET WORTH (Exclusive of Residence)**
IF UNDER $25,000. STATE AMOUNT $ _____
☐ $25,000. ☐ $50,001. ☑ OVER $100,000. ESTIMATED % OF NET WORTH IN LIQUID ASSETS: 70 %
☐ $50,000. ☐ $100,000.

**BANK LOCATION AND TYPE OF ACCOUNT**
☑ Checking   BANK: WEBSTER BANK
☑ Savings    LOCATION: WINDSOR, CT

**CUSTOMER'S ESTIMATED ANNUAL INCOME**
IF UNDER $10,000. STATE AMOUNT $ _____
☐ $10,000./$20,000. ☐ $20,001./$30,000. ☐ $30,001./$50,000. ☑ OVER $50,000.

**OTHER ESTIMATED ANNUAL INCOME (SPOUSE, ETC)**
IF UNDER $10,000. STATE AMOUNT $ _____
☐ $10,000./$20,000. ☐ $20,001./$30,000. ☐ $30,001./$50,000. ☐ OVER $50,000.

**PRIOR INVESTMENT EXPERIENCE**
OPTIONS: 5 YRS. STOCKS: 10 YRS. COMMODITIES: ___ YRS. OTHER: ___ YRS.

**INVESTMENT OBJECTIVES**
☐ SAFETY OF PRINCIPAL  ☑ GROWTH  ☑ SPECULATIVE
☐ INCOME  ☑ SHORT TERM TRADING  ☐ OTHER

**DOCUMENT(S) FURNISHED**
☐ PROSPECTUS  ☑ RISK BOOKLET  ☐ OTHER  DATE: 4/01/01

**ANTICIPATED TYPES OF TRANSACTION**
☐ LEVEL 1: COVERED OPTIONS ONLY  ☐ LEVEL 3: LEV. 1+2+SPREADS
☑ LEVEL 2: LEV. 1+LONG PURCHASE  ☐ LEVEL 4: LEV. 1, 2, 3+NAKED PUT WRITING

**CURRENT OPTION POSITIONS WITH OTHER FIRMS (LIST POSITIONS)**

## CUSTOMER OPTION ACCOUNT INFORMATION

I agree as follows:

1. I have received a current prospectus and/or other material as required by present laws, rules and regulations governing the trading of options whether such trading occurs on a national securities exchange or in another market;

2. Any option transaction made for my account shall be subject to the rules and regulations of the exchange (CBOE, AMEX, PBW or other, as the case may be) and its clearing corporation or market applicable to such option transaction. I, acting alone or in concert with others, will not exceed any applicable position or exercise limits imposed by the exchange with respect to option trading;

3. I agree to advise you of any changes in my investment objectives, financial situation and needs insofar as such changes are material to my option transactions. The financial and other information listed above is accurate;

4. In the event that I fail to give instructions to you by 3:00 p.m. (Central Time) of the last day on which an option may be exercised, you may, but are not obligated to sell such option for the best available price as my broker or buy such option as principal for your account. I understand that you will utilize the (FIFO) first in-first out method for allocation of assignments;

5. You shall not be liable in connection with the execution, handling selling, purchasing, exercising or endorsing of puts or calls for my account, except for gross negligence or willful misconduct on your part;

6. Regarding any margin transactions I may make and supplementing the terms and conditions of your margin agreement, in the event I do not meet your margin calls promptly, you are authorized in your sole discretion and without notification to me to take any and all steps necessary to protect yourselves in connection with put or call transactions made for my account including without limitation the right to buy or sell short or short exempt, for my account and risk any part or all of the shares represented by options endorsed by you for my account or to buy, sell or exercise (including but not limited to exercising a long position or hedging a short position) for my account and risk any puts or calls as you may deem necessary to fully protect yourselves. Any and all losses and expenses incurred by you in this connection will be reimbursed by me;

7. This agreement shall apply to all puts or calls which you may have executed, purchased, sold or handled for my account and also shall apply to all puts or calls which you may hereafter purchase sell, handle or execute for my account;

8. This agreement and its enforcement shall be governed by the laws of the State of California. This agreement shall bind the heirs, executors administrators successors and assigns of the undersigned and shall inure to the benefit of your successors and assigns.

9. • ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
   • THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
   • PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEDURES.
   • THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.
   • THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
   • NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL: (i) THE CLASS CERTIFICATION IS DENIED; OR (ii) THE CLASS IS DECERTIFIED; OR (iii) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

THE UNDERSIGNED AGREE(S) THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US, OR BETWEEN ME AND THE ORGANIZATION THAT HAS INTRODUCED MY ACCOUNT CARRIED BY YOU, INCLUDING BUT NOT LIMITED TO THOSE INVOLVING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED ONLY BEFORE THE PACIFIC STOCK EXCHANGE INC. OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULEMAKING BOARD, AND IN ACCORDANCE WITH ITS ARBITRATION RULES THEN IN FORCE. THE UNDERSIGNED MAY ELECT IN THE FIRST INSTANCE THE ARBITRATION FORUM, BUT IF THE UNDERSIGNED FAIL(S) TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO EMMETT A. LARKIN COMPANY, INC. AT 100 BUSH STREET, SAN FRANCISCO, CA 94104, ATTN: COMPLIANCE DEPT., BEFORE THE EXPIRATION OF FIVE DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM YOU TO MAKE SUCH ELECTION, THEN YOU MAY MAKE SUCH ELECTION. JUDGEMENT UPON THE AWARD OF ARBITRATORS MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

THE UNDERSIGNED HAVE RECEIVED AND READ "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" AND THE "SPECIAL STATEMENT FOR UNCOVERED OPTIONWRITERS" AND AM/ARE AWARE OF THE SPECIAL RISKS ATTENDANT TO OPTION TRADING. THE STATEMENTS CONTAINED ON THIS FORM ARE ACCURATE.

BY SIGNING THIS AGREEMENT, THE UNDERSIGNED ACKNOWLEDGE(S) (1) THAT, IN ACCORDANCE WITH PARAGRAPH 9, THE UNDERSIGNED AGREE(S) IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH EMMETT A. LARKIN COMPANY, INC., OR BETWEEN ME/US AND THE ORGANIZATION THAT HAS INTRODUCED THE UNDERSIGNED ACCOUNT CARRIED BY YOU AND, (2) RECEIPT OF A COPY OF THIS AGREEMENT.

CUSTOMER'S SIGNATURE: X [signed] Daniel D Russo
DATE SIGNED: 4-19-01
CUSTOMER'S SIGNATURE (FOR JOINT ACCOUNT ONLY): X
DATE SIGNED:

AL EXECUTIVE SIGNATURE: X [signed]
DATE SIGNED: 4/20/01
BRANCH MANAGER'S SIGNATURE: X [signed]
DATE SIGNED: 4/24/01

CUSTOMER IS APPROVED FOR:
☐ LEVEL 1  ☑ LEVEL 2  ☐ LEVEL 3  ☐ LEVEL 4
DATE APPROVED:

REGISTERED OPTIONS PRINCIPAL'S SIGNATURE: X

FOR EAL USE ONLY
DATE ____
LEVEL ____
BY ____

EXHIBIT B

MAR-006 (Rev. 8/99)    WHITE: EAL COPY    YELLOW: CUSTOMER COPY    PINK: BRANCH/RR COPY

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Daniel Russo, Individually, and as Trustee for Aegis International, Inc. Profit Sharing Retirement Plan, Daniel D. Russo IRA, Daniel D. Russo c/f Jared D. Russo, Daniel D. Russo c/f Joel R. Russo, and Daniel D. Russo c/f Daniel Russo, Jr. (Claimants) v. Fiserv Securities, Inc., Federal Street Investments, Inc., Salomon Grey Financial Corp., and Roger Blundell (Respondents)

Case Number: 02-06557                    Hearing Site: Boston, Massachusetts

Nature of the Dispute: Customers v. Members and Associated Person.

## REPRESENTATION OF PARTIES

Claimants Daniel Russo, Individually, ("D. Russo") and as Trustee for Aegis International, Inc. Profit Sharing Retirement Plan ("Aegis"), Daniel D. Russo IRA ("D. Russo IRA"), Daniel D. Russo c/f Jared D. Russo ("D. Russo c/f Jared Russo"), Daniel D. Russo c/f Joel R. Russo ("D. Russo c/f Joel Russo"), and Daniel D. Russo c/f Daniel Russo, Jr. ("D. Russo c/f Daniel Russo") hereinafter collectively referred to as "Claimants": Harry S. Miller, Esq., Perkins, Smith & Cohen, LLP, Boston, MA.

Respondent Fiserv Securities, Inc. ("Fiserv"): Steven D. Plissey, Esq., Sherman & Howard, LLC, Denver, CO.

Respondents Federal Street Investments, Inc. ("Federal Street") and Roger Blundell ("Blundell"): Roger J. Blundell, Federal Street Investments, Inc., Boston, MA.

Respondent Salomon Grey Financial Corp. ("Salomon Grey"): Austin Allen, Esq., Law Offices of Austin Allen, Grand Prairie, TX. Previously represented by: Mark A. Rosen, Esq., Manchel & Brennan, P.C., Newton, MA; Belinda Goss, Esq., Salomon Grey Financial Corp., Dallas, TX.

Fiserv, Federal Street, Blundell, and Salomon Grey are hereinafter collectively referred to as "Respondents".

## CASE INFORMATION

Statement of Claim filed on or about: October 30, 2002.
Claimants' Opposition to Fiserv's Request to Dismiss Statement of Claim and Claimants' Opposition to Respondents Federal Street's and Blundell's Motion to Dismiss filed on or about: June 27, 2003.

EXHIBIT C

NASD Dispute Resolution
Arbitration No. 02-06557
Award   Page 2 of 7

Claimant D. Russo signed the Uniform Submission Agreement: October 21, 2002.
Claimant Aegis signed the Uniform Submission Agreement: October 21, 2002.
Claimant D. Russo IRA signed the Uniform Submission Agreement: November 14, 2002.
Claimant D. Russo c/f Jared Russo signed the Uniform Submission Agreement: November 14, 2002.
Claimant D. Russo c/f Joel Russo signed the Uniform Submission Agreement: November 14, 2002.
Claimant D. Russo c/f Daniel Russo signed the Uniform Submission Agreement: November 14, 2002.

Request to Dismiss Statement of Claim and Answer filed by Respondent Fiserv on or about: January 29, 2003.
Reply Supporting Request to Dismiss Statement of Claim filed by Respondent Fiserv on or about: July 10, 2003.
Respondent Fiserv signed the Uniform Submission Agreement: January 28, 2003.

Joint Statement of Answer filed by Respondents Federal Street and Blundell on or about: February 14, 2003.
Rebuttal to Claimants' Response to Motion to Dismiss filed by Federal Street and Blundell on or about: July 10, 2003.
Respondent Federal Street signed the Uniform Submission Agreement: February 18, 2003.
Respondent Blundell signed the Uniform Submission Agreement: February 14, 2003.

Statement of Answer filed by Respondent Salomon Grey on or about: February 3, 2003.
Respondent Salomon Grey did not sign the Uniform Submission Agreement.

## CASE SUMMARY

Claimants asserted the following causes of action: unauthorized margin and option trading; unsuitable trading; failure to follow instructions; churning; breach of contract; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; breach of a broker's duty of reasonable care; breach of a brokerage's duty to supervise and ensure compliance; negligent and intentional misrepresentation; fraud and deceit; negligence; violation of the Uniform Securities Act 410(b) and M.G.L. 110A(b); violations of state and federal securities laws; violations of state consumer protection laws; and violation of industry rules. Claimants' claim involved various types of unspecified common stock, mutual funds, and options.

Unless specifically admitted in its Request to Dismiss the Statement of Claim and Answer, Respondent Fiserv denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

NASD Dispute Resolution
Arbitration No. 02-06557
Award   Page 3 of 7

Unless specifically admitted in their Answer, Respondents Federal Street and Blundell denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

Unless specifically admitted in its Answer, Respondent Salomon Grey denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

### RELIEF REQUESTED

Claimants requested compensatory damages in the amount of $661,948.00; interest through the date of arbitration; costs; expenses and attorneys' fees; punitive damages; and other relief that the Panel may deem just and proper.

Respondent Fiserv requested that the claims against it be denied, and that it be awarded attorneys' fees, expert witness fees, and costs pursuant to its agreements with Claimant, and that other relief be granted as the Panel deems appropriate.

Respondents Federal Street and Blundell requested that the Arbitrators dismiss al claims against them and assess all NASD fees against Claimants.

Respondent Salomon Grey requested that the Arbitrators dismiss all claims against it and assess all NASD arbitration related fees against the Claimant.

### OTHER ISSUES CONSIDERED AND DECIDED

Respondent Salomon Grey did not file with NASD Dispute Resolution a properly executed Uniform Submission Agreement but is required to submit to arbitration pursuant to the Code and, having answered the claim, and appeared and testified at the hearing, is bound by the determination of the Panel on all issues submitted.

On or about June 24, 2004, NASD Dispute Resolution was notified that Claimants settled their claims with Respondents Fiserv, Federal Street, and Blundell.

On or about July 21, 2004, Respondent Salomon Grey filed with NASD Dispute Resolution a Motion to Reopen Testimony for the Purpose of Filing a Post-hearing Brief. After due consideration, the Panel denied the Motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

### AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination

NASD Dispute Resolution
Arbitration No. 02-06557
<u>Award   Page 4 of 7</u>

as follows:

1. Respondent Salomon Grey is liable for and shall pay to Claimant D. Russo compensatory damages in the amount of $100,000.00.
2. Respondent Salomon Grey is liable for and shall pay to Claimant D. Russo IRA compensatory damages in the amount of $50,000.00.
3. Respondent Salomon Grey is liable for and shall pay to Claimant D. Russo attorneys' fees in the amount of $50,000.00 pursuant to page 27 of Claimants' Statement of Claim, 9 U.S.C. § 1 et seq.; <u>Raytheon Co. v. Automated Business Sys., Inc.</u> 882 F.2d 6 (1st Cir. 1989); <u>Hunt v. Mobil Oil Corp.</u>, 654 F. Supp. 1487 (S.D.N.Y. 1987).
4. Any and all relief not specifically addressed herein, including punitive damages, is denied.

## **FEES**

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
    Initial claim filing fee      = $375.00

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Fiserv Securities, Inc. is a party.
    Member surcharge      = $2,250.00
    Pre-hearing process fee      = $ 750.00
    Hearing process fee      = $4,000.00

Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Federal Street Investments, Inc. is a party.
    Member surcharge      = $2,250.00
    Pre-hearing process fee      = $ 750.00
    Hearing process fee      = $4,000.00

Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Salomon Grey Financial Corp. is a party.
    Member surcharge      = $2,250.00
    Pre-hearing process fee      = $ 750.00

NASD Dispute Resolution
Arbitration No. 02-06557
Award    Page 5 of 7

    Hearing process fee                                                = $4,000.00

### Adjournment Fees
Adjournments granted during these proceedings for which fees were assessed:

    December 2-6, 2003, joint adjournment request           = Waived

### Forum Fees and Assessments
The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Four (4) Pre-hearing sessions with Panel @ $1,200.00 | | | = $ 4,800.00 |
| Pre-hearing conferences: | June 6, 2003 | 1 session | |
| | July 25, 2003 | 1 session | |
| | October 15, 2003 | 1 session | |
| | February 9, 2004 | 1 session | |
| Eight (8) Hearing sessions @ $1,200.00 | | | = $ 9,600.00 |
| Hearing Dates: | July 7, 2004 | 2 sessions | |
| | July 8, 2004 | 2 sessions | |
| | July 9, 2004 | 2 sessions | |
| | July 12, 2004 | 2 sessions | |
| Total Forum Fees | | | = $14,400.00 |

1. The Panel has assessed $7,200.00 of the forum fees jointly and severally against Claimants.
2. The Panel has assessed $7,200.00 of the forum fees against Respondent Salomon Grey.

### Administrative Costs
Administrative costs are expenses incurred due to a request by a party for special services beyond the normal administrative services. These include, but not limited to, additional copies of arbitrator awards, copies of audio transcripts, retrieval of documents from archives, interpreters, and security.

1. Respondent Federal Street requested administrative services      = $15.00

NASD Dispute Resolution
Arbitration No. 02-06557
Award   Page 6 of 7

### Fee Summary

1. Claimants are jointly and severally liable for:
    | | |
    |---|---|
    | Initial Filing Fee | = $   375.00 |
    | Forum Fees | = $ 7,200.00 |
    | Total Fees | = $ 7,575.00 |
    | Less payments | = $ 1,575.00 |
    | Balance Due NASD Dispute Resolution | = $ 6,000.00 |

2. Respondent Fiserv is solely liable for:
    | | |
    |---|---|
    | Member Fees | = $ 7,000.00 |
    | Total Fees | = $ 7,000.00 |
    | Less payments | = $ 7,000.00 |
    | Balance Due NASD Dispute Resolution | = $       0.00 |

3. Respondent Federal Street is solely liable for:
    | | |
    |---|---|
    | Member Fees | = $ 7,000.00 |
    | Administrative Costs | = $     15.00 |
    | Total Fees | = $ 7,015.00 |
    | Less payments | = $ 4,155.00 |
    | Balance Due NASD Dispute Resolution | = $ 2,860.00 |

4. Respondent Salomon Grey is solely liable for:
    | | |
    |---|---|
    | Member Fees | = $ 7,000.00 |
    | Forum Fees | = $ 7,200.00 |
    | Total Fees | = $14,200.00 |
    | Less payments | = $ 7,000.00 |
    | Balance Due NASD Dispute Resolution | = $ 7,200.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 02-06557
Award Page 7 of 7

## ARBITRATION PANEL

| | |
|---|---|
| Richard D. Jordan | Public Arbitrator, Presiding Chairperson |
| Missy D. Margolis | Public Arbitrator |
| Dennis M. Cronin, Jr., Esq. | Non-Public Arbitrator |

**Concurring Arbitrators' Signatures**

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument is which is my award.

*(signed) Richard D. Jordan*
Richard D. Jordan
Public Arbitrator, Presiding Chairperson

08-18-04
Signature Date

_____
Missy D. Margolis
Public Arbitrator

_____
Signature Date

_____
Dennis M. Cronin, Jr., Esq.
Non-Public Arbitrator

_____
Signature Date

August 25, 2004
Date of Service (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 02-06557
Award   Page 7 of 7

## ARBITRATION PANEL

| | | |
|---|---|---|
| Richard D. Jordan | - | Public Arbitrator, Presiding Chairperson |
| Missy D. Margolis | - | Public Arbitrator |
| Dennis M. Cronin, Jr., Esq. | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument is which is my award.

_____               _____
Richard D. Jordan                              Signature Date
Public Arbitrator, Presiding Chairperson


_____               _____
Missy D. Margolis                              Signature Date
Public Arbitrator


_/s/ Dennis M. Cronin_____                _August 18, 2004_____
Dennis M. Cronin, Jr., Esq.                    Signature Date
Non-Public Arbitrator


_____August 25, 2004_____
Date of Service (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 02-06557
Award   Page 7 of 7

## ARBITRATION PANEL

| | | |
|---|---|---|
| Richard D. Jordan | - | Public Arbitrator, Presiding Chairperson |
| Missy D. Margolis | - | Public Arbitrator |
| Dennis M. Cronin, Jr., Esq. | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument is which is my award.

_____                    _____
Richard D. Jordan                                   Signature Date
Public Arbitrator, Presiding Chairperson


_____Missy D. Margolis_____                        _____Aug. 18 2004_____
Missy D. Margolis                                   Signature Date
Public Arbitrator


_____                    _____
Dennis M. Cronin, Jr., Esq.                         Signature Date
Non-Public Arbitrator


_____August 25, 2004_____
Date of Service (For NASD Dispute Resolution use only)