UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SALOMON GREY FINANCIAL CORP., §
§
Plaintiff, §
§
v. § CIVIL ACTION
§
§ NO. _____
DANIEL RUSSO, INDIVIDUALLY AND §
AS TRUSTEE FOR AEGIS §
INTERNATIONAL, INC. PROFIT §
SHARING RETIREMENT PLAN, §
§
Defendant §

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS ORIGINAL COMPLAINT TO VACATE OR IN THE ALTERNATIVE TO MODIFY OR CORRECT AWARD OF ARBITRATION**

TO THE JUDGE OF THIS HONORABLE COURT:

Salomon Grey Financial Corporation ("SGFC") files this its Brief simultaneously with its Original Complaint asking this Court to issue an Order vacating, or in the alternative, remanding for correction, an arbitration award issued in favor of Daniel Russo, Individually, and as Trustee for Aegis International, Inc. Profit-Sharing Retirement Plan (collectively "Russo"), and would show the Court as follows:

## FACTUAL BACKGROUND

Defendant Russo, the Claimant in the arbitration below, filed his Statement of Claim acting individually and as the trustee for Aegis International, Inc. Profit-Sharing and Retirement Plan, Inc. (the "Plan"). Statement of Claim p. 1.[1]

---

[1] A true and correct copy of Russo's Statement of Claim (the "Statement of Claim") is attached to Plaintiff's Original Complaint and Motion to Vacate or in the Alternative to Modify or Correct Award of Arbitration ("Plaintiff's Original Complaint") as **Exhibit "A"** and is incorporated herein by reference as if set forth here in full.

BRIEF IN SUPPORT OF REQUEST TO VACATE OR MODIFY ARBITRATION AWARD—Page 1.

SGFC is a brokerage firm whose principal place of business is in Dallas, Texas. Webb Aff. ¶ 3.[2] SGFC, a National Association of Securities Dealers ("NASD") member, and Russo are parties to brokerage contracts that required the arbitration of disputes between them. Texas. Webb Aff. ¶ 5.

SGFC was one of four (4) Respondents in the original arbitration proceeding below (NASD Arbitration No. 02-6557). The other Respondents were: Federal Street Investments, Inc., FISERV Correspondent Services, Inc., and Roger Blundell ("Blundell"). Those Respondents settled with Russo prior to the arbitration hearing. Webb Aff. ¶ 6.

Russo, the Claimant below, brought the arbitration to recover for Blundell's alleged wrongdoing "in dealing with Mr. Russo's accounts from July 1999 to present," a period of approximately five years. Statement of Claim p. 1. Blundell was Russo's broker. Statement of Claim p. 1. All of the other Respondents in the arbitration were firms that either employed or were affiliated with Blundell for most of the time Blundell handled Russo's accounts. Statement of Claim p. 1.

Blundell only briefly worked for SGFC. Russo's Statement of Claim admitted that SGFC's role in this lawsuit, if any, was extremely limited: "Mr. Russo agreed to transfer his accounts to Blundell's new firm, Salomon Grey Financial, on November 20, 2000. *Less than six months later*, on April 26, 2001, Blundell told Mr. Russo that he had started his own business and he wanted to move Mr. Russo's accounts to his new firm, Federal Street Investments." Statement of Claim p. 3.

---

[2] A true and correct copy of the Affidavit of McClure Webb (the "Webb Affidavit") is attached hereto as <u>Exhibit "1"</u> and is incorporated by reference as if set forth here in full.

**BRIEF IN SUPPORT OF REQUEST TO VACATE OR MODIFY ARBITRATION AWARD—Page 2.**

The arbitrators in this case issued their award in pertinent part requiring SGFC to pay compensatory damages, attorneys' fees, and certain other fees and costs associated with the arbitration (the "Arbitration Award") despite a dearth of claims against SGFC in the Statement of Claim and its status as a pass-through for Blundell's accounts for a few months.[3]

For the reasons stated herein, the SGFC seeks an Order vacating the portions of the arbitration award in this case that require it to pay any damages.

## ARGUMENTS AND AUTHORITIES

### THE COURT SHOULD VACATE THE AWARD BECAUSE IT FAILS TO COMPLY WITH EXPRESS NASD REQUIREMENTS.

Under 9 U.S.C. § 10 of the Federal Arbitration Act (the "FAA") a court may properly vacate an arbitration award when the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10 (d).

Russo signed agreements which specifically required that any arbitration occurring under the agreement "*shall be* conducted only before" either NASD or two other securities industry self-regulated organizations.[4] Russo signed a Uniform Submission Agreement choosing to submit his claims to the NASD and agreeing to the arbitration of his claims under the NASD's rules which are part and parcel of the terms

---

[3] A true and correct copy of the Arbitration Award is attached to Plaintiff's Original Complaint as **Exhibit "C"** and is incorporated herein by reference as if set forth here in full.

[4] *See e.g.*, Salomon Grey Option Application introduced at arbitration and signed by Russo. The Option Application is attached to Plaintiff's Original Complaint as **Exhibit "B"** and is incorporated herein by reference as if set forth here in full.

BRIEF IN SUPPORT OF REQUEST TO VACATE OR MODIFY ARBITRATION AWARD—Page 3.

governing the arbitration.[5] The terms of the Submission Agreement clearly set out the parameters of the arbitration. Russo agreed as follows:

> 1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration *in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization [in this case NASD].*
>
> 2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.
>
> 3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). *The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.*

*See* NASD Uniform Submission Agreement (emphasis added).

Thus, the Code of Arbitration Procedure is the agreed upon rules of this arbitration. NASD Code of Arbitration Procedure Rule 10214 states the following:

<u>10214</u>. **Awards**
The arbitrator(s) shall be empowered to award any relief that would be available in court under the law. The arbitrator(s) shall issue an award setting forth a summary of the issues, including the type(s) of dispute(s), the damages or other relief requested and awarded, a statement of any other issues resolved, and a statement regarding the disposition of any statutory claim(s).
*[Adopted by SR-NASD-99-08 eff. Jan. 18, 2000.]*
*Selected Notice to Members: 99-96.*

*See* http://www.nasdadr.com/arb_code/arb_code.asp#10214.

Thus, a proper arbitration award must contain **a statement regarding the disposition of any statutory claim(s).** This award does not, and therefore is not proper as exceeding the powers of the arbitrators.

---

[5] A true and correct copy of the Uniform Submission Agreement Russo signed is attached hereto as <u>Exhibit "2"</u> and is incorporated herein by reference as if set forth here in full.

**BRIEF IN SUPPORT OF REQUEST TO VACATE OR MODIFY ARBITRATION AWARD—Page 4.**

The policy behind this requirement is clear. NASD members are held to strict reporting requirements regarding securities law violations — requirements that brokerage firms like SGFC simply cannot fulfill when these matters are not specifically addressed by arbitration awards.

For example, NASD Code of Conduct Rule 3070(a)(1) requires all NASD members to report as follows: "Each member shall promptly report to the Association whenever such member or person associated with the member: "has been found to have violated any provision of any securities law or regulation . . . ." See http://cchwallstreet.com/nasd/nasdviewer.asp?SelectedNode=3&FileName=%2Fnasd%2FNASD_Rules%2FRulesoftheAssociation_mg%2Exml#chp_1_3_125.

The reporting requirements governing self-regulatory organizations like NASD, the Securities Act of 1933, and the Securities Exchange Act of 1934, were enacted to protect investors from the predatory behavior of securities industry personnel. *See generally Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987). Because arbitrations are the primary method of dispute resolution in the securities industry, permitting arbitrators to ignore specific award requirements would be contrary to public policy in that it would, as is true in this case, prevent meaningful reporting on and by brokers and brokerage firms. They simply would not know what to report.

It would also contradict well-settled case law. In *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991), Dean Witter Reynolds, Inc. ("Dean Witter") appealed from the district court's confirmation of an arbitration award rendered in favor of Paul and Magda Szuts ("Szuts"). *Id.* The parties' arbitration agreement provided that "[a]ny arbitration hereunder shall be before at least three arbitrators." The *Dean Witter*

court noted that under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, a district court can vacate an arbitration award in a case "[w]here the arbitrators exceeded their powers." *See Dean Witter*, 931 F.2d at 831, *citing* 9 U.S.C.A. § 10(d); *see also Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir.1979); *Coast Trading Co. v. Pacific Molasses Co.*, 681 F.2d 1195, 1198 (9th Cir.1982) (authority of arbitration panel comes from purchase agreement and contract for arbitration); *Fils et Cables D'acier de Lens v. Midland Metals Corp.*, 584 F.Supp. 240, 244, 245 (S.D.N.Y.1984); *Aamot v. Eneboe*, 352 N.W.2d 647, 649 (S.D.1984) ("the arbitrators' powers are derived from the arbitration agreement"); *see also Domke Comm. Arbitration* § 33:02 (Rev.Ed., Wilner). The *Dean Witter* court also held that to the extent that arbitration rules are incorporated into the terms of an arbitration agreement (and the rules do not conflict with the express terms of the agreement), they **must be honored**. *Id.*

The *Dean Witter* Court specifically held:

> The power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed. We think the provision of the arbitration agreement that "[a]ny arbitration hereunder shall be before at least three arbitrators" means what it says: any contract-related controversy between Szuts and Dean Witter must be arbitrated by no less than three arbitrators. The provision requires that at least three arbitrators participate in the arbitration by hearing all the evidence presented by the parties; by hearing the arguments presented by the parties; and by participating in the consultation and deliberation among the arbitrators on the decision of the controversy. These things did not happen here. The going forward of two arbitrators after a third arbitrator was removed from the panel thus violated the provision of the arbitration agreement that "[a]ny arbitration ... shall be before at least three arbitrators. Because the arbitrators violated the provisions of the arbitration agreement requiring arbitration before at least three arbitrators, they exceeded their authority under the arbitration agreement. So, we vacate the award of the panel, *see Totem Marine Tug & Barge, Inc.*, 607 F.2d at 651, and remand for new arbitration proceedings before a panel of three new arbitrators.

*Dean Witter*, 931 F.2d at 831.

Here, as in *Dean Witter* and the other cases cited therein, the arbitrators exceeded their authorities by failing to comply with express NASD rules as agreed to by Russo. As quoted above, the NASD rules require a specific statement regarding the disposition of each statutory claim. However, the Award states only the following:

> Claimants asserted the following causes of action: unauthorized margin and option trading; unsuitable trading; failure to follow instructions; churning; breach of contract; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; breach of a broker's duty of reasonable care; breach of a brokerage's duty to supervise and ensure compliance; negligent and intentional misrepresentation; fraud and deceit; negligence; ***violation of the Uniform Securities Act 410(b) and M.G.L. 110A(b); violations of state and federal securities laws; violations of state consumer protection laws; and violation of industry rules.*** Claimant's claim involved various types of unspecified common stock, mutual funds, and options.

*See* Arbitration Award p. 2.

Then, on pp. 3-4, the Arbitrators state only:

> **After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:**
>
> 1. **Respondent Salomon Grey is liable for and shall pay to Claimant D. Russo compensatory damages in the amount of $100,000;**
>
> 2. **Respondent Salomon Grey is liable for and shall pay to Claimant D. Russo compensatory damages in the amount of $100,000;**
>
> 3. **Respondent Salomon Grey is liable for and shall pay to Claimant D. Russo's attorneys fees....**

What, if any, statutes were violated? What should be reported? While the Award mentions two specific statutory claims, it only addresses other statutory claims in general, stating that the claimant sued for "violations of state and federal securities laws; violations of state consumer protections laws; and violation of industry rules." *Id.*

BRIEF IN SUPPORT OF REQUEST TO VACATE OR MODIFY ARBITRATION AWARD—Page 7.

The Award does not explain the specific nature of these violations or even which particular statutes and regulations were involved, or found to have been violated. While SGFC is aware that the arbitrators need not express the reasons for their award, the NASD rule does require the award to set out which statutes SGFC violated. The Award in this case does not meet that requirement. The Award does not contain a statement of which statutes it found SGFC violated, if any, as the basis of its award to Russo. As discussed above, this defeats the public's right to understand exactly what type of wrongdoing a brokerage firm or broker has been found liable for violating, and most importantly, it fails to fulfill the express requirements of the NASD rules.

Therefore, the arbitrators exceeded their authority in issuing the Award and this Court should vacate the award and remand for a new arbitration in accordance with the well-settled law under the FAA.

Respectfully Submitted,

_Patti Wasserman_
PATTI WASSERMAN
Board of Bar No. 555662
WASSERMAN & ROSENBLATT
7 Foster Street
Quincy, MA 02169
(617) 773-7221 phone
(617) 479-0006 fax

ROBBYN P. WYSOCKI
Texas State Bar No. 22115600
McCUE WYSOCKI, P.C.
14135 Midway Road, Suite 250
Dallas, Texas 75001
(972) 490-0808
(972) 490-9545 Fax

ATTORNEYS FOR SALOMON GREY FINANCIAL CORPORATION

# AFFIDAVIT OF McCLURE WEBB

STATE OF TEXAS §
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared McCLURE WEBB, known to me to be the person whose name is subscribed below and who, under oath, did depose and state the following:

1. My name is McClure Webb. I am over the age of twenty-one (21) years and am fully competent to make this affidavit;

2. I have personal knowledge of the facts contained in this affidavit, and those facts are true and correct.

3. I am an officer of Salomon Grey Financial Corporation ("SGFC"), whose principal place of business is in Dallas Texas.

4. SGFC is a member of the National Association of Securities Dealers.

5. SGFC is a party to brokerage contracts, such as the one with Daniel Russo, which require the arbitration of disputes between them.

6. SGFC was one of four respondents in the original arbitration proceeding No. 02-06557. The other three respondents settled with the Claimant Russo prior to the arbitration hearing.

Signed this 22nd day of September, 2004, under the pains of perjury.

_____
McCLURE WEBB

SWORN TO AND SUBSCRIBED before me the undersigned authority on this 22nd day of September, 2004.

[Notary seal: JILL CASSETTY, MY COMMISSION EXPIRES OCTOBER 4, 2004]

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

AFFIDAVIT OF McCLURE WEBB

EXHIBIT 1