UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

                                 )

SALOMON GREY FINANCIAL CORP.,     )

                                 )

         Plaintiff,                 )

                                 )

v.                                )       Civil Action No. 04 12056 NG

                                 )

DANIEL RUSSO, INDIVIDUALLY AND    )

AS TRUSTEE FOR AEGIS INTERNATIONAL  )

INC. PROFIT SHARING RETIREMENT PLAN,  )

                                 )

         Defendant.               )

_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO VACATE OR IN THE
ALTERNATIVE TO MODIFY OR CORRECT AWARD OF ARBITRATION AND
DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**

Defendant Daniel Russo, individually and as trustee for the Aegis International Inc. Profit

Sharing Retirement Plan (the "Plan"), hereby opposes Plaintiff Salomon Grey Financial Corp.'s

("Salomon Grey") Motion to Vacate or in the Alternative to Modify or Correct Award of

Arbitration (the "Motion") and requests that the Court confirm the Arbitrators' Award in its

entirety and enter judgment in conformity therewith under 9 U.S.C. § 9.

In addition, Russo respectfully requests that the Court enter an order of sanctions against

Salomon Grey for initiating this baseless action, the only purposes of which are to delay

Salomon Grey's compliance with the Arbitrators' Award and to coerce Mr. Russo to settle his

claims for a sum substantially less than the $200,000 he was properly awarded.

## I.     BACKGROUND FACTS

In its discussion of the background facts of this matter, Salomon Grey understandably

attempts to downplay the serious wrongs that it committed against Mr. Russo and the Plan. The

truth, however, is that Salomon Grey utterly failed to meet the obligations it owed to its

customer, Mr. Russo.  The Arbitration Panel found Salomon Grey's behavior so egregious that it

ordered Salomon Grey to pay Mr. Russo $50,000 in attorneys' fees in addition to the $150,000 it

awarded Mr. Russo in compensatory damages.  The pertinent facts of the arbitration, which are

essentially ignored by Salomon Grey, are as follows.

In July 1999, Mr. Russo became a client of Roger Blundell ("Blundell"), a registered

representative employed at the time with Barron Chase Securities ("Barron Chase").  Mr. Russo

held several accounts with Blundell and Barron Chase, including his personal account and an

account for the Plan.  The accounts were transferred to Salomon Grey in October 2000 when

Blundell began working there.  By March 2001, Blundell had opened his own firm, Federal

Street Investments, and the accounts transferred from Salomon Grey to Federal Street.

During the time that Blundell served as the registered representative for the accounts,

they declined in value by nearly $700,000.  More than forty percent of those losses, or more than

$300,000, occurred while the accounts were held with Salomon Grey.  At the arbitration, Mr.

Russo proved Salomon Grey's direct responsibility for the losses, which never would have

occurred had Salomon Grey met its basic obligations to Mr. Russo and the Plan.  Instead,

Salomon Grey utterly failed in virtually every aspect of its relationship with Mr. Russo.

When the accounts arrived at Salomon Grey, they were an absolute disaster.  They were

invested heavily on margin and were comprised primarily of the penny stocks that Barron Chase[1]

routinely pushed on its customers and which were entirely unsuitable for Mr. Russo's

---

[1]    Barron Chase was well-known as a boiler room operation.  Before it was forced to close its doors, Barron
Chase was the subject of hundreds of customer complaints and a multitude of regulatory actions.  More recently,
Barron Chase's officers and attorneys have been the subject of actions brought by the Securities and Exchange
Commission and a criminal complaint filed by the United States Attorney for the Southern District of New York
relating to an IPO for a company called busybox.com, which was purchased in Mr. Russo's accounts and was
discussed in detail during the arbitration proceedings.  On June 16, 2004 Barron Chase's securities counsel, Thomas
Prousalis, Jr., was convicted in New York on federal conspiracy and securities fraud charges arising from a scheme
to defraud investors in the busybox.com initial public offering.

conservative investment objectives.  The margin trading occurred even though Mr. Russo had repeatedly instructed Blundell that he was not interesting in margin trading.  Similarly there were huge numbers of option transactions despite the fact that Mr. Russo had not authorized them and did not know they were occurring.[2]

Upon their transfer from Barron Chase to Salomon Grey, the accounts became Salomon Grey's responsibility.  Salomon Grey had an obligation to review the accounts and their holdings coming in, determine Mr. Russo's investment objectives for the accounts, determine Mr. Russo's willingness to accept risk in the accounts, and ensure that the accounts were maintained in accordance with Mr. Russo's objectives and investment criteria.  Going forward, Salomon Grey was obligated to keep Mr. Russo informed about the activity in his accounts, and it was required to ensure that the investment activity was suitable and prudent.

Salomon Grey did virtually nothing to meet its obligations to Mr. Russo.  Salomon Grey never performed any suitability review of the accounts as required by NASD and NYSE rules.  Salomon Grey failed to conduct any review even knowing that Blundell and the accounts were coming from the notorious Barron Chase and even seeing that the activity and the holdings in the accounts were extreme.  No one at Salomon Grey even contacted Mr. Russo to determine what sort of investments were appropriate for him, nor did they ever receive a signed customer agreement from him that set forth his investment objectives.  Violating industry regulations and its own firm policies, Salomon Grey also allowed margin trading to continue in Mr. Russo's accounts without having a signed margin agreement and allowed option trading without having a

---

[2]    When Mr. Russo questioned Blundell about margin and option transactions that appeared on his account statements, Blundell flatly lied to Mr. Russo.  Blundell told Mr. Russo that his account statements were incorrect and could not be relied on for accurate information.  He told Mr. Russo that, despite the huge margin balances appearing on his account statements, there was no margin in his accounts.  Blundell blamed the purported discrepancies on order failures caused by the clearing firm used by Barron Chase and Salomon Grey.  Blundell continued to mislead Mr. Russo about the true status of his accounts while exploiting them for his own benefit and for the benefit of the firms for which  Blundell worked.

signed option agreement. Even the initial transfer of the accounts to Salomon Grey was improper as Mr. Russo never gave any written authorization for the transfer as required and, indeed, did not even know about the transfer until after it had taken place.

Salomon Grey is not the innocent bystander it purports to be. Salomon Grey knew of Barron Chase's regulatory problems and its history of customer complaints, yet accepted Blundell and the accounts without any effort to review the account holdings or ensure that the account activity was appropriate.[3] Salomon Grey allowed Blundell to easily continue his abusive investment practices, exploiting Mr. Russo's account assets, when Salomon Grey had the opportunity, the means and the *obligation* to halt them. Indeed, even though Salomon Grey supposedly placed Blundell under "Intensive Special Compliance Supervision" at the start of his employment, there is no indication that Salomon Grey performed even the slightest amount of supervision over Blundell and his accounts. Salomon Grey had affirmative obligations to Mr. Russo and his accounts whether they were held with Salomon Grey for six months or six days. Salomon Grey, however, chose to turn a blind eye resulting in huge financial injury to Mr. Russo.

After four days of hearings on the sole issue of Salomon Grey's liability to Mr. Russo, the Arbitration Panel found Salomon Grey responsible for its failings and entered an award of $150,000 in Mr. Russo's favor along with an award of $50,000 attorneys' fees.

---

[3]    Salomon Grey has a history of hiring brokers from brokerage firms with long records of regulatory abuses and customer complaints like Barron Chase. For example, Salomon Grey's president and chief executive officer both came from Pacific Cortez Securities, a firm that was barred by the NASD from engaging in the penny stock industry.

## II.    ARGUMENT

### A.    The Enforcement Of Arbitration Awards Is Strongly Favored, And An Award Will Be Modified Only Under The Most Unusual Of Circumstances

There is a strong federal public policy in favor of arbitration.  *See Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1 (1983).  Toward that end, courts are allowed a limited scope of review over arbitral decisions.  Such limited review is necessary in order to encourage the use of arbitration as an alternative to formal litigation.  *Remmey v. Paine Webber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24).

The grounds for review of an arbitration award are enumerated in 9 U.S.C. § 10.  They are the following: (1) when the award was procured by corruption, fraud or undue means; (2) when there was partiality or corruption in the arbitrators; (3) when the arbitrators were guilty of misconduct in the arbitration proceedings; and (4) when the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made.  9 U.S.C. § 10.  *See also Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990).

As shown below, none of these grounds exists in this case, and Salomon Grey's Motion should be denied in its entirety.

### B.    The Arbitrators Issued A Final And Definite Award That Addressed All Claims Raised

The sole basis asserted by Salomon Grey for vacating the arbitration Award is that the Arbitrators exceeded their powers or imperfectly exercised them by not making a specific statement of their findings on Mr. Russo's statutory claims.  Salomon Grey, therefore, contends that a mutual, final and definite award was not made.  Salomon Grey asserts that because Rule

10214 of the NASD Code of Arbitration Procedure states that an award shall contain "a statement regarding the disposition of any statutory claim(s)," the Arbitrators must spell out the specific disposition of each statutory claim.

Salomon Grey's argument has been previously raised and soundly rejected by the Federal courts. In *Ketchum v. Prudential-Bache Sec., Inc.*, 710 F. Supp. 300 (D. Kan. 1989), a case exactly on point, the plaintiff argued that the arbitrators imperfectly executed their powers by failing to explain their disposition of the federal and state statutory claims involved in the case as required by Securities Arbitration Rule 42. *Id.* at 302. A copy of the *Ketchum* decision is attached hereto as <u>Exhibit A</u>. Like Rule 10214 of the NASD Code of Arbitration Procedure at issue here, Securities Arbitration Rule 42 provides that an arbitration award shall "include a statement regarding the disposition of any statutory claims." *Id.* The court rejected the plaintiff's arguments, the same arguments asserted by Salomon Grey, in their entirety. The court held that the statement in Rule 42 relating to the disposition of statutory claims "does not mandate an explanation; it merely mandates a ***statement*** regarding the disposition of statutory claims." *Id.* The court found that the award, which specifically stated that "[a]ll other claims . . . against all other respondents . . . are denied," met the requirement of a statement and no further elaboration was required. *Id. See also Antwine v. Prudential-Bache Sec., Inc.*, 735 F. Supp. 1331, 1333 (S.D. Miss. 1989) (citing *Ketchum* and finding that requirement of Rule 42 was met by statement in award that "[a]ll claims submitted by [claimants] are denied"); *Gonzalez v. Shearson Lehman Brothers, Inc.*, 794 F. Supp. 53 (D.P.R. 1992) (holding that award stating that it was entered "in full and final settlement of all claims between the parties" was "mutual, final and definite" even though it did not specifically mention disposition of counterclaim).

The Award at issue in this case contains two sentences that satisfy the requirement of "a statement" by Rule 10214. Those portions of the Award are conveniently omitted from the text of Salomon Grey's brief. The Award specifically states that "[a]ny and all relief not specifically addressed herein . . . is denied." Award at p. 4 (attached hereto as Exhibit B). The Award further states that it is intended as a "full and final resolution of the issues submitted for determination." Award at p. 3. The Arbitration Panel is simply not required to elaborate further. *Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6, 8 (1st Cir. 1989) ("arbitrators are not required to make formal 'findings of fact' to accompany the awards they issue. Indeed, 'arbitrators have no obligation . . . to give their reasons for an award at all.'") (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)); *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985) ("arbitrators may render a lump sum award without disclosing their rationale for it"); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir. 1981) (same).

Moreover, even if the two statements in the Award were deemed an insufficient statement of the disposition of statutory claims, this still does not require the Award to be vacated or modified. As stated in *Ketchum*, arbitration rules "do not have the force of law and a rule violation is not one of the enumerated statutory bases for vacating an arbitration award." 710 F. Supp. at 303; *see also Gonzalez*, 735 F. Supp. at 1333; *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680-81 (7th Cir. 1983) (holding that arbitration rules and code do not have the force of law and are not the proper starting place for an inquiry into an award's validity).

Salomon Grey's assertion that clarification of the Award is necessary so that it can properly report the Award and protect investors is spurious at best. Salomon Grey has already reported the arbitration Award to industry regulators, and the Award is already reflected on the

firm's CRD with sufficient detail to inform investors of Salomon Grey's improper behavior. Salomon Grey's CRD at pp. 17-18 (attached hereto as Exhibit C).  A closer look at Salomon Grey's CRD and that of its president, attached hereto as Exhibit D, shows that Salomon Grey is not the least bit concerned with investor protection.  Salomon Grey's CRD reflects that is has been the subject of at least one regulatory action, one civil judicial action, and five customer arbitrations.[4]  Exhibit C at p. 6.  Similarly, the CRD of Salomon Grey's president, Kyle Rowe ("Rowe"), reflects one criminal action, one regulatory action, one civil judicial action and seven customer complaints.  Exhibit D at p. 6.  Moreover, as clearly reflected on Rowe's CRD, it has taken years in some instances for Salomon Grey and its officers to report items for inclusion on their CRDs.  For example, Rowe has three customer arbitrations listed on his current CRD that were not reported until June 2004 despite the fact that they were originally filed and received by Rowe in July 2001, April 2002, and March 2002, respectively.  Exhibit D at pp. 21-25.  Salomon Grey's false assertion of concern for investors holds no water.

### C.  Salomon Grey's Motion Is Frivolous, Warranting An Award Of Sanctions And Attorneys' Fees To Mr. Russo

One of the purposes of Rule 11 of the Federal Rules of Civil Procedure is to "deter parties from asserting claims or defenses that are frivolous or brought for an improper purpose." *Hochen v. Bobst Group, Inc.*, 198 F.R.D. 11, 13 (D. Mass. 2000); *see also Silva v. Witschen*, 19 F.3d 725, 730 (1st. Cir. 1994).  Sanctions may be imposed where, as here, an action is brought in order to coerce settlement or to delay recovery or the imposition of an award.  *See Elster v. Alexander*, 122 F.R.D. 593 604 (N.D. Ga. 1988) (Rule 11 sanctions awarded against plaintiff and his attorney where claim was filed "not in pursuit of any legal cause of action genuinely believed by the plaintiff or his counsel to exist at the time their documents were filed, but rather for the

---

[4]    Older versions of Salomon Grey's CRD show that Salomon Grey has been the subject of additional civil judicial actions that do not appear on the most recent version of its CRD.

purpose of coercing a settlement from defendants"); *U.S. Offshore, Inc. v. Seabulk Offshore, Ltd.*, 753 F. Supp. 86, 92 (S.D.N.Y. 1990) (attorneys' fees awarded to opposing party where challenge to arbitration award was motivated by desire to forestall compliance therewith).

An imposition of sanctions is appropriate here given the baseless and frivolous nature of the Motion and Salomon Grey's clear intent to delay its compliance with the Award and to coerce Mr. Russo to settle his claims against Salomon Grey for an amount less than that awarded by the Panel. Salomon Grey's efforts to coerce a settlement began immediately after the Panel rendered the Award. Always offering substantially less than the payment required by the Award, Salomon Grey tried to convince Mr. Russo to accept a settlement by threatening to appeal the arbitration Award (at great expense to Mr. Russo) and by claiming that the firm is likely to close its doors rather than pay the full Award. Salomon Grey's settlement efforts were not based on any valid challenge or objection to the Award, and its specious appeal to this Court shows that Salomon Grey's intent is only to postpone its obligations to Mr. Russo, rather than correct some miscarriage of justice resulting from the arbitration.

Salomon Grey's plan of delay is also clear from the financial burdens that have recently befallen the firm as a result of various regulatory actions. In August 2004, Salomon Grey and its president, Kyle Rowe, were fined $100,000 for their involvement in a block purchase and distribution of stock in violation of Securities and Exchange Commission Regulation M. Exhibit C at pp. 11-12; Exhibit D at pp. 12-14. Rowe also was suspended from association with any NASD member in any capacity for the two-week period from September 7 through September 20, 2004. Exhibit D at pp. 12-14.

Salomon Grey also recently lost the services of one of its major producers, Edgar Alacan ("Alacan"), the now-former branch manager of Salomon Grey's New York City branch office.

On July 6, 2004, the Securities and Exchange Commission entered an order against Alacan permanently barring him from association with any broker or dealer, ordering disgorgement, and further ordering the payment of a civil penalty of $110,000. A copy of the SEC order is attached hereto as Exhibit E. The order resulted from a finding that Alacan was guilty of a number of statutory violations including unauthorized trading, churning, and failing to follow customers' instructions. The loss of such a major producer under such circumstances is likely to have a severe financial impact on the firm.

Salomon Grey clearly stands to benefit from the delay it has enjoyed by filing this action. Only by filing such an action could Salomon Grey avoid the NASD's requirement that all arbitration awards be paid within thirty days. This strategic delay -- rather than a need to correct any injustice -- is the motivation for this filing, and it is wholly improper. Salomon Grey should not be permitted to resort to the courts to avoid its arbitration obligations, and it should not be permitted to use the judicial system to further increase the costs and frustrations Mr. Russo has had to bear. In light of Salomon Grey's conduct, an award of sanctions and attorneys' fees is appropriate here.

### III.    CONCLUSION

For the reasons stated above, Daniel Russo, individually and on behalf of the Aegis International Inc. Profit Sharing Retirement Plan requests that the Court deny Salomon Grey's Motion to Vacate or In the Alternative To Modify or Correct Award of Arbitration in its entirety. Daniel Russo also asks that the Court confirm the Arbitrators' Award in its entirety and enter judgment in conformity therewith. Finally, Daniel Russo requests that the Court order Salomon Grey to pay Daniel Russo's costs and attorneys' fees incurred in this action and impose sanctions of double costs and fees against Salomon Grey for its frivolous challenge of the Award.

Respectfully submitted,

DANIEL RUSSO, individually and as
Trustee for AEGIS INTERNATIONAL
INC. PROFIT SHARING RETIRMENT
PLAN,

By his attorneys,


_____/s/  Sara B. Davis_____
Harry S. Miller, BBO# 346946,
  hmiller@pscboston.com
Matthew J. Tuttle, BBO# 562758
  mtuttle@pscboston.com
Sara B. Davis, BBO# 648002
  sdavis@pscboston.com
PERKINS, SMITH & COHEN, LLP
One Beacon Street, 30th Floor
Boston, MA  02108
(617) 854-4000

Dated: November 1, 2004


29534-2-OppMotVacate.doc

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2004, a true copy of the foregoing was served by mail upon the following via First-Class U.S. Mail, postage prepaid at the following:

Patti Wasserman
Wasserman & Rosenblatt
7 Foster Street
Quincy, MA  02169

Robbyn P. Wysocki
McCue Wysocki, P.C.
14135 Midway Road, Suite 250
Dallas, TX  75001


_____/s/  Sara B. Davis_____
Sara B. Davis


11