UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
SALOMON GREY FINANCIAL CORP.,      )
     Plaintiff,                     )
                                    )
     v.                             )   C.A. No. 04-12056-NG
                                    )
DANIEL RUSSO, INDIVIDUALLY AND      )
AS TRUSTEE FOR AEGIS INTERNATIONAL  )
INC. PROFIT SHARING RETIREMENT      )
PLAN,                               )
     Defendant.                     )
```
GERTNER, D.J.:

### MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION TO VACATE, DEFENDANT'S MOTION TO CONFIRM, AND RULE 11 SANCTIONS
April 21, 2005

Plaintiff Salomon Grey Financial Corporation ("SGFC") brought suit seeking relief from an unfavorable decision rendered by an arbitration panel. Specifically, SGFC moves this Court to vacate or modify the arbitration award ("the Award") in favor of defendant Daniel Russo ("Russo"). In addition to opposing plaintiff's motion to vacate or modify, defendant moves to confirm the arbitration award, and for Rule 11 sanctions against SGFC.

For the reasons discussed below, I **DENY** plaintiff's motion to vacate or modify/correct the arbitration award [document #1], and **GRANT** defendant's motion to confirm the Award [document #5]. I **GRANT** defendant's request for Rule 11 sanctions against SGFC in conjunction with filing this suit [document #5].

**I.   BACKGROUND**

Defendant Russo, individually and as trustee for the Aegis International Profit Sharing Retirement Plan ("the Plan"), became a client of stockbroker Roger Blundell ("Blundell") in July 1999. Russo established the Plan in 1987 for the purpose of providing retirement benefits for the nine employees of Russo's small insurance investigation firm. Russo is the Plan's trustee and is also a participant. Russo invested the Plan contributions in stocks and mutual funds beginning in the early 1990s. His investment objectives were low-risk growth and security.

In July 1999, Russo's long-time broker was leaving the firm Barron Chase Securities. After several phone calls from Blundell, another Barron Chase broker, urging Russo to keep his accounts with Barron Chase, Russo agreed and Blundell took over as his broker on all of his accounts. Those accounts included not only the Plan but other personal accounts.

Russo invested with Blundell at Barron Chase until November 2000. When Blundell left to join SGFC in November 2000, Russo agreed to go with him, believing that his accounts were performing well and according to his objectives. Six months later, in March 2001, Blundell asked Russo if he could bring his accounts to his new, self-run brokerage firm, Federal Street Investments. Again, believing that things were running smoothly, Russo agreed to go with Blundell to his new firm.

Shortly thereafter, Russo discovered multiple practices and patterns of wrongful conduct on the part of Blundell. Russo then filed an arbitration claim against Blundell, SGFC, Federal Street Investments, and the clearing agent, Fiserv. The arbitration complaint was filed pursuant to the Uniform Submission Agreement, which Russo had signed as part of the standard contract between National Association of Securities Dealers ("NASD") brokerage houses, like SGFC, and account holders, like Russo. Under that agreement, account holders are required to submit to NASD-facilitated arbitration of disputes between themselves and NASD's member brokerage houses.

In the complaint, Russo, on behalf of himself and Aegis, alleged that his accounts had declined in value by $700,000 as a direct result of unauthorized and unsuitable margin and option trading, churning, breach of contract, breach of covenant of good faith, breach of fiduciary duty, breach of a brokerage's duty to supervise and ensure compliance, negligent and intentional misrepresentation, and fraud and deceit, among several other allegations of wrongful conduct. In essence, Blundell ignored Russo's conservative low-risk investment objectives, instead trading on the margins and in options. Blundell also churned the account by pushing through hundreds of unauthorized trades during short periods of time, and lied about monthly statements when Russo inquired about bizarre earnings reports and heavy trading.

Russo alleged violations of the Uniform Securities Act § 410(b), Mass. Gen. Law § 110A(b), other state and federal securities laws, violations of state consumer protection laws, and violation of industry rules. At no time, Russo alleges, did SGFC intervene in Blundell's dealings with the Russo accounts despite several red-flags.

Russo's arbitration claim requested compensatory damages, including interest, punitive damages, and attorneys' fees and costs. Three respondents in the arbitration proceeding settled with Russo prior to the arbitration hearing. The only parties to the arbitration were Russo and SGFC. After four days of hearings on the sole issue of SGFC's liability to Russo for Blundell's misconduct, the Arbitration Panel found SGFC liable to Russo for compensatory damages of $150,000, with an additional award of $50,000 in attorneys' fees. In the written Award, the arbitration panel stated that "[a]ny and all relief not specifically addressed herein, including punitive damages, is denied."

## II.  SGFC'S CHALLENGE TO THE ARBITRATION AWARD

In the fall of 2004, SGFC filed suit in this Court challenging the NASD's arbitration award pursuant to 9 U.S.C. § 10 of the Federal Arbitration Act, which provides that a federal court may properly vacate an arbitration award when the arbitrators exceeded their powers, or so imperfectly executed

them that a mutual, final, and definitive award upon the subject matter submitted was not made.  9 U.S.C. § 10(d).

SGFC claims that the arbitrators exceeded their powers because the Award did not include a statement regarding the disposition of the statutory claims at issue, as required by NASD's arbitration rules.  The NASD's rules are binding by virtue of the Uniform Submission Agreement, which Russo signed.

One of the NASD rules requires that the arbitrators "issue an award setting forth a summary of the issues, including the type(s) of dispute(s), the damages or other relief requested and awarded, a statement of any other issues resolved, **and a statement regarding the disposition of any statutory claim(s).**"  NASD Code of Arbitration Procedure Rule 10214 (emphasis added).  SGFC argues that the arbitration award in this case did not specifically address the disposition of each of the statutory violations alleged.  As such, it is deficient enough to be in violation of 9 U.S.C. § 10, and the Award must be vacated or modified.[1]

    A.    <u>Standard for District Court Review of An Arbitration Award</u>

---

[1] SGFC does not explain how the Court should modify the Award, were it to find it imperfect, pursuant to 9 U.S.C. § 11(c).  In general, district court modifications to arbitration awards are made to correct obvious minor miscalculations or factual mistakes, or where the arbitrators awarded upon a matter not submitted to them.  <u>See</u> 9 U.S.C. § 11.  Here, SGFC is asking the Court to modify the substance of the Award so that it spells out how the arbitrators *might have or should have* ruled on each of the statutory grounds at issue.  The Court is not in a position to reenact the arbitration proceedings in such a manner.

There is a strong federal public policy in favor of arbitration. See Moses H. Cone Memorial Hosp. v. Mercury Constr., 460 U.S. 1, 24 (1983). To that end, courts are encouraged to approach arbitration disputes with " a healthy regard for the federal policy favoring arbitration." Id. The Federal Arbitration Act promotes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987).

As enumerated in 9 U.S.C. § 10, the grounds for review of an arbitration award are as follows: (1) when the award was procured by corruption, fraud or undue means; (2) when there was partiality or corruption in the arbitrators; (3) when the arbitrators were guilty of misconduct in the arbitration proceedings; and (4) when the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. 9 U.S.C. § 10; see also Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990)("the statute does not allow courts to roam unbridled in their oversight of arbitral awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in certain specific ways").

B.  **Did The Arbitrators Exceed Or So Imperfectly Exercise Their Powers That The Award Should Be Vacated?**

As explained above, SGFC argues that "a mutual, final and definite," 9 U.S.C. § 10, award was not accomplished because the arbitrators' written award did not contain "a statement regarding the disposition of any statutory claim(s)," as required by NASD Code of Arbitration Rule 10214.  In essence, SGFC argues that the arbitrators were required to spell out the specific disposition of each of Russo's statutory claims.  Absent such an explanation, argues SGFC, the arbitration award is fatally deficient and must be vacated or ordered corrected by this Court.

SGFC does not cite to any court that has followed this line of reasoning, as there is none.  Indeed, their argument has been raised in and squarely rejected by the only federal court that has addressed it.  In an analogous securities arbitration case, Ketchum v. Prudential-Bache Sec., Inc., 701 F.Supp. 300 (D.Kan. 1989), the plaintiff argued that the arbitrators imperfectly executed their powers by failing to explain their disposition of the federal and state statutory claims at issue, as required by the governing arbitration rule.  The court outright rejected plaintiff's claims, holding that the arbitration rule "does not mandate an explanation; it merely mandates a *statement* regarding the disposition of statutory claims."  Id. at 303.  The written arbitration award in that case mirrors the award in the instant case, which summarily denies "[a]ny and all relief not

7

specifically addressed herein." The Ketchum court found this to be a sufficient statement of the disposition of the statutory claims involved.

The Award further states that it represents a "full and final resolution of the issues submitted." The First Circuit, among other courts, has found this statement, coupled with the statement disposing of all claims not specifically addressed in the award, to be sufficient to satisfy Rule 10214's requirements. In Raytheon Co. v. Automated Business Sys., Inc., 882 F.2d 6, 8 (1st Cir. 1989), the court firmly stated as much: "[I]t has long been settled that arbitrators are not required to make formal 'findings of fact' to accompany the awards they issue. Indeed, 'arbitrators have no obligation . . . to give their reasons for an award at all.' United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960)."

Moreover, even if the two statements in the Award amounted to an insufficient statement of the disposition of the statutory claims, vacating or modifying the Award would still not be required. Arbitration rules simply "do not have the force of law and a rule violation is not one of the enumerated statutory bases for vacating an arbitration award." Ketchum, 710 F.Supp. at 303; see also Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 680-81 (7th Cir. 1983) (arbitration rules are not the proper starting point for inquiring into an award's validity).

Absent a showing of misconduct, partiality, abuse or imperfect execution of power on the part of the arbitrators, as laid out in 9 U.S.C. § 10, the arbitrators' award in favor of Russo should not be disturbed.

### III. **RULE 11 SANCTIONS**

In addition to opposing SGFC's motion to vacate or modify the Award, Russo seeks an award of sanctions, pursuant to Federal Rule of Civil Procedure 11, and attorneys' fees. Rule 11 sanctions are appropriate where claims are being asserted for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11(b)(1).

Russo argues that Rule 11 sanctions against SGFC are in order here because of the "baseless and frivolous nature of the [motion to vacate]," SGFC's "clear intent to delay compliance with the Award," and alleged attempts by SGFC to use this suit to coerce a settlement. As evidence of SGFC's improper motive, Russo alleges that, immediately after the arbitration panel issued the Award, SGFC initiated several attempts to convince him to accept a settlement by threatening to appeal the Award. Each time, SGFC offered to settle for substantially less than the payment ordered by the Award, and SGFC claimed that the firm would likely close its doors rather than pay the full Award. Russo further alleges that SGFC filed this action in order to

9

avoid NASD's requirement that all arbitration awards be paid within thirty days.

I am persuaded that the lawsuit brought by SGFC is wholly without merit. The complaint is perfunctory. The supporting memorandum failed to cite cases in support of its position. And with respect to the Rule 11 issues, SGFC failed to respond altogether. It seems abundantly clear that the only purpose for bringing this action was to delay the day that the Award would become final and the payment to Russo would come due, precisely what Rule 11 forbids. See <u>Pathe Computer Control Systems Corp. v. Kinmont Industries, Inc.</u>, 955 F.2d 94 (1st Cir. 1992) (district court's imposition of sanctions was proper where the timing of a motion "is consistent with a last minute [] effort to delay a likely adverse decision").

"It is beyond serious dispute that a federal court possesses inherent power to shift attorneys' fees when parties conduct litigation in bad faith." <u>Jones v. Winnepesaukee Realty</u>, 990 F.2d 1, 4 (1st Cir. 1993), citing <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 765-66 (1980) (recognizing "bad faith" exception to general rule that federal courts cannot ordinarily make fee-shifting awards). Accordingly, I will award Russo the costs and attorneys' fees incurred in defending against this action. Russo is to submit an application therefor by **May 19, 2005**. SGFC has until **May 26, 2005**, to respond to Russo's application.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, I **DENY** plaintiff SGFC's motion to vacate or modify the arbitration award, and I **GRANT** defendant Russo's motion to confirm the arbitration award. In light of SGFC's conduct, I **GRANT** defendant Russo's motion for Rule 11 sanctions against SGFC in the form of attorneys' fees and costs.

**SO ORDERED.**

**Dated: April 21, 2005**     **  s/ NANCY GERTNER U.S.D.J.  **